Filed 1/13/22  P. v. Huerta CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FRANCISCO HUERTA,<br><br>    Defendant and Appellant. | B309716<br><br>(Los Angeles County Super. Ct. Nos. BA206719/BA400409) |

APPEAL from an order of the Superior Court of Los Angeles County, William C. Ryan, Judge.  Affirmed.

Christopher Lionel Haberman, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance by Plaintiff and Respondent.

—————————————

Francisco Huerta appeals from orders denying his Penal Code section 1473.7, subdivision (a)(2) motions to vacate convictions and sentences for spousal abuse and corporal injury to a child's parent.[1]  His appointed counsel filed a brief pursuant to *People v. Serrano* (2012) 211 Cal.App.4th 496 (*Serrano*), raising no issues.  Huerta filed a supplemental brief arguing that newly discovered evidence established his actual innocence. Because the new evidence did not prove actual innocence, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1.    *Spousal Abuse Conviction in 2001*

On September 3, 2000, police arrested Huerta after he had an altercation with Laura Torres, the mother of his child.[2]  The People charged him with assault with a deadly weapon (§ 245, subd. (a)(1)) and dissuading a witness (§ 136.1, subd. (c)(1)).

At the September 18, 2000 preliminary hearing, a police officer testified that in responding to Torres's call for help, he encountered a distraught Torres with a torn blouse.  Torres told him that Huerta came to her home, demanded to take their infant daughter, approached her with a knife, pushed her, cut her blouse with the knife saying it was "a slut shirt," and then exited with the baby.  Torres told the officer that on his way out, Huerta ripped the phone off the wall.  The officer testified that Torres's

---

[1]    All further undesignated statutory references are to the Penal Code.

Section 1473.7, subdivision (a)(2) allows convictions to be vacated where there is newly discovered evidence of actual innocence.

[2]    At this point in time, Huerta had one child with Torres. They later had a second child.

13-year-old son reported Huerta entered the home and cut the microwave and refrigerator power cords.  The son told the officer that he followed Huerta to Torres's room and watched Huerta cut Torres's blouse with a knife and take the baby.  The officer testified he observed that Torres's telephone was ripped from the wall and that his partner noted the microwave and refrigerator power cords were severed.

At the preliminary hearing, both Torres and her son denied the statements they had made to the police, i.e. that Huerta had a knife, threatened Torres, cut her blouse while she was wearing it, or damaged power and phone cords.  Torres testified she was angry because Huerta had another girlfriend.

Following the testimony, defense counsel argued that the court should not hold Huerta to answer for the assault.  The court disagreed and opined that Torres and her son appeared to be lying at the hearing.  The court explained, "what reason would the boy have had to tell the police the same story [as his mother], and now come in and tell a different story, other than the fact that his mother told him not to tell the same story because they wanted Mr. Huerta to be let out of this or released."  The court told defense counsel the son "wasn't even a good liar.  That's the credibility call of the court."  To the extent defense counsel insinuated that Torres and her son concocted the original story told to police about Huerta's assault, the court pointed out that the pair were with the police immediately after the incident and unable to fabricate such a story.  The court then held Huerta to answer for assault under section 245, subdivision (a) (1).

On January 12, 2001, Huerta pleaded no contest to one count of spousal abuse (§ 273.5) for his September 18, 2000 actions.  The court granted him probation and ordered him to

take domestic violence classes. On February 20, 2003, after a hearing on a probation violation, the court imposed a three-year state prison sentence of for his 2001 spousal abuse conviction, stayed the sentence, and ordered Huerta to serve 270 days in county jail. On September 29, 2003, after another violation, the court ordered Huerta to serve the remainder of the three-year term in state prison.

### 2. *Corporal Injury to a Child's Parent in 2013*

On September 25, 2012, police arrested Huerta following another incident with Torres, which had occurred on July 10, 2012. In case No. BA400409, the People charged Huerta with corporal injury to a child's parent (§ 273.5, subd. (a)), with a prior conviction within seven years (§ 273.5, subd. (e)(1)).

According to the preliminary hearing transcript, Huerta and Torres had an on-again-off-again relationship for 14 years and had two children together. Torres testified that Huerta attacked her when she discovered him pulling the sensor cables from her car. When she demanded to know why he was vandalizing her car, Huerta yelled back at her and shoved her against a concrete wall, injuring her. Two days later, she reported the incident to police because Huerta had showed up at her house, calling her names.

Based on this evidence, the court held Huerta to answer for the corporal injury to a child's parent. On March 4, 2013, Huerta pled no contest and the court sentenced him to two years in prison.

### 3. *Motions to Vacate*

In June 2019, Huerta filed motions to vacate his 2001 spousal abuse and 2013 corporal injury to a child's parent convictions based on newly discovered evidence of actual

4

innocence (§ 1473.7, subd. (a)(2)). Both motions asserted that Huerta had only recently learned that Torres suffered from bipolar disorder, paranoia, and depression, and that had he known this, he would not have pled no contest to the charges in either case.

In the supporting declaration for the motion to vacate the 2001 conviction, Torres stated that at the time of the incident, she suffered from depression and paranoid episodes, which were not fully addressed by the mental health resources she had been receiving from the Regional Center. Torres attested that she had made up the story that Huerta threatened to kill her, threatened her with a knife, and cut her shirt. She stated she fabricated the story out of jealousy and anger because she had seen Huerta talking to other women. Torres attested she did not tell Huerta, the prosecutor, police, or the court about her mental health conditions. She indicated She reported false parole violations so she could have control over Huerta.

In her declaration in support of the motion to vacate the 2013 conviction, Torres stated that in July 2012, she noticed her tires were slashed and rear window was broken, and she suspected Huerta's girlfriend did the damage. Torres attested that she went to Huerta's mother's house, where she suspected the other woman might be. There, she yelled at Huerta and tried to enter the house. When Huerta told her to leave, Torres moved toward and hit Huerta. He pushed her away from the house and told her to leave. "As he was pushing me off him, and with my forward force toward him, I fell hitting my head on the fence, and falling to the ground." Torres stated her anger and jealousy caused her to tell police the false story about Huerta ramming her into a wall during the incident with the car. She did not tell

the prosecutors or court about her bipolar diagnosis or related medications. She revealed her diagnosis to Huerta in 2018.

4.      ***Hearing on the Motions to Vacate***

At the request of the People, the court ordered that the motions be consolidated. At the August 12, 2020 evidentiary hearing on the motions, Huerta and Torres testified.

Torres explained her mental health issues and stated her mental and emotional conditions lead her to obsess about Huerta cheating on her. For the 2001 conviction, Torres did not remember most of the incident, including whether Huerta had a knife, cut her blouse, or severed/pulled cords in her home. She only recalled telling the police that Huerta entered her house, took the baby, and that her shirt was ripped and wires were on the floor. Torres testified she did not tell the police a false story in order to get Huerta in trouble, and that she did not remember testifying at the preliminary hearing.

Torres's depression worsened after her brother was killed. Torres began using methamphetamine and drinking heavily, while taking Zoloft. Concerning the incident in July 2012, Torres recalled that her car's tires were flat, and windows broken. She suspected either Huerta or his then-girlfriend caused the damage. Torres testified that while intoxicated, she went to Huerta's house, screamed at him, and attempted to enter the home. She testified she "kind of pushed his arm and then he pushed me back." Torres repeated that Huerta pushed her. She testified that she fell to the side and hit her head. Torres insisted she did not lie to the police following the two incidents.

At the hearing, Huerta testified to Torres's obsessive and paranoid behaviors. He also discussed that he had recently learned about Torres's bipolar disorder.

6

On October 14, 2020, the court denied both motions in 16-page statement of decision, summarizing testimony and its reasoning. The court concluded that although the evidence was newly discovered, it did not show actual innocence. The court explained that Huerta never showed how Torres's mental health conditions prevented her from truthfully reporting the crimes.

Regarding the first conviction, the court wrote:

"At the time of the hearing on the instant motions, Ms. Torres testified that she did not remember many details of the incident, including whether Defendant pulled a knife on her or pulled or cut the cords, but she recalled telling the police that Defendant entered her house, took the baby, and that her shirt was ripped and wires were on the floor. Ms. Torres testified that she does not remember making up any statement or whether she specifically told the police that Defendant was going to kill her, but also affirmatively stated that she did not tell the police a fake story."

"Knowledge of Ms. Torres' diagnosis does not change any of the facts known at the time of Defendant's plea. Defendant was aware of Ms. Torres behavior and her potential credibility issues if the People proceeded to trial based on her recantation at the preliminary hearing. Learning of Ms. Torres's bipolar disorder certainly corroborates both Defendant's and Ms. Torres's description of her behavior, but it is not evidence of Defendant's actual innocence. Especially in light of Ms. Torres's testimony that she cannot now testify whether or not many details of the allegations made at the time are untrue."

The court explained the newly discovered evidence involving the 2013 conviction likewise failed to show innocence

7

because: "Ms. Torres's account largely follows the facts known at the time of Defendant's plea. She also now still testifies that Defendant pushed her, causing her to hit her head and fall to the ground. She also could not now testify that she believed Defendant was not trying to harm her. Ms. Torres's diagnosis and substance use does not change the fact that Defendant was aware of her behavior prior to pleading to the charge. He was also already aware based on his prior conviction, that Ms. Torres previously made allegations of abuse that she later recanted. While her diagnosis explains why she behaved the way she did, it is not evidence of actual innocence."

**5.    *Appeal***

On December 3, 2020, Huerta filed a notice of appeal from the denial of his motions to vacate. We appointed appellate counsel. After reviewing the record, counsel filed an opening brief pursuant to *Serrano, supra,* 211 Cal.App.4th 496, stating that he found no arguable issues to raise on appeal, and had informed Huerta of his right to file a supplemental brief on his own behalf. On August 16, 2021, we advised Huerta that he had 30 days to submit any contentions or issues he wished us to consider. Huerta filed a supplemental brief on September 16, 2021.

## DISCUSSION

When a defendant appeals the denial of post-conviction relief and appellate counsel identifies no cognizable issues, the Court of Appeal has "no independent duty to review the record for reasonably arguable issues." (*People v. Cole* (2020) 52 Cal.App.5th 1023, 1039 (*Cole*), review granted Oct. 14, 2020, S264278.) "However, if the defendant files a supplemental brief, the Court of Appeal is required to evaluate any arguments

8

presented in that brief and to issue a written opinion that disposes of the trial court's order on the merits . . . ." (*Id.* at p. 1040.) Here, Huerta filed supplemental briefing arguing that his two convictions should be vacated based on newly discovered evidence of actual innocence.

A. *Applicable Law*

We begin our discussion with section 1473.7, subdivision (a)(2), under which Huerta moved to vacate. Section 1473.7, subdivision (a)(2) permits "[a] person who is no longer in criminal custody to file a motion to vacate a conviction or sentence" if "[n]ewly discovered evidence of actual innocence exists that requires vacation of the conviction or sentence as a matter of law or in the interests of justice." The moving party bears the burden of proving entitlement to relief by a preponderance of the evidence. (§ 1473.7, subd. (e)(1); *People v. Perez* (2020) 47 Cal.App.5th 994, 997.)

In reviewing a denial of a motion pursuant to section 1473.7, we apply the independent standard of review. "[U]nder independent review an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law." (See *People v. Vivar* (2021) 11 Cal.5th 510, 526–527 [independent review standard for denial of a motion under section 1473.7, subd. (a)(1) dealing with failure to advise of immigration consequences; citation omitted.] *People v. Bravo* (2021) 69 Cal.App.5th 1063, 1070, 1078 [applying same standard to denial of a section 1473.7, subd. (a)(2) motion].) Under that standard, an appellate court must give deference to a trial court's "factual findings based on the trial court's personal observation of witnesses," but for "facts derive[d] entirely from written

9

declarations and other documents," no deference is required. (*Vivar*, at pp. 527–528.)

B.    *Application*

We agree with the trial court that Huerta's newly discovered evidence did not demonstrate actual innocence. Although Huerta recently discovered the cause of Torres's mental condition, Huerta's *discovery* of the cause does not establish Huerta's actual innocence. We agree with the trial court's assessment: "While her diagnosis explains why she behaved the way she did, it is not evidence of actual innocence."

For the 2002 conviction, Torres's recent declaration recanted her statements to police, just as Torres had done at the preliminary hearing. The only new evidence—her mental health diagnosis—did not explain defendant's innocence. When questioned at the hearing, Torres could not remember any crucial facts. She also testified that she did not fabricate a story when she reported the crime to police, which was the very theory defendant was asserting in his motion to vacate.

For the 2013 conviction, in both her declaration and testimony, Torres maintained that Huerta pushed her into a wall. Torres's testimony and declarations fail to vindicate Huerta.

Although Huerta's supplemental brief argues that the new facts demonstrate actual innocence, for the reasons earlier stated, we find the argument unpersuasive.

We have reviewed the record and are satisfied that Huerta's appointed appellate counsel has fully complied with his responsibilities and no arguable issues exist. (*See Cole, supra,* 52 Cal.App.5th at pp. 1039–1040; *Serrano, supra,* 211 Cal.App.4th at p. 503.)

10

### *DISPOSITION*

The October 8, 2020 order denying Huerta's motions to vacate the convictions and sentences are affirmed.

RUBIN, P. J.

WE CONCUR:

BAKER, J.

KIM, J.

11